1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   NATIONSTAR MORTGAGE LLC,

11                     Plaintiff,

12           v.

13   DREXEL INVESTMENT INC., et al.,

14                     Defendants.

CASE NO. 13-cv-01245-BJR

MEMORANDUM OPINION &
ORDER

15

16   **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY
17                                JUDGMENT**

18        Before the Court are Defendants Drexel Investment ("Drexel"), Suneet Diwan, and Jared

19   Huyett's (collectively, "the Defendants") Motion for Summary Judgment [47], filed on April 29,

20   2014, and Plaintiff's Motion for Partial Summary Judgment [52], filed on June 5, 2014.  The

21   motions are fully briefed and ripe for resolution.  Having considered the parties' arguments,

22   pleadings, and relevant case law, the Court finds that a hearing is unnecessary.  For the reasons

23

24

MEMORANDUM OPINION & ORDER- 1

1  set forth below, Defendants' Motion for Summary Judgment [47] is **GRANTED**; Plaintiff's

2  Motion for Partial Summary Judgment [52] is **GRANTED IN PART**.

### I.  BACKGROUND

4      This case concerns property known as 3306 Claremont Avenue, Seattle, Washington,

5  98144 ("the Property").  In September of 2010, Plaintiff's predecessor-in-interest, Aurora Loan

6  Services, LLC,[1] acquired ownership of the Property.  Decl. of Adam G. Hughes in Support of

7  Pl.'s Mot. for Summ. J. [53] ("Hughes Decl."), Ex. 1. (Trustee's Deed).

8      Between February 2009 and June 2011, defaulted defendants Trina Y. Jacobs, Arlando

9  Ray Jacobs, and Clarence Roland (collectively, "defaulted Defendants") caused multiple

10 fraudulent documents to be recorded with the King County Recorder's Office that purported to

11 grant them title to the Property.  In addition, Trina Jacobs filed a lawsuit against Aurora Loan

12 Services seeking a temporary restraining order; this suit was dismissed and found to have been

13 advanced without reasonable cause.  Hughes Decl. at ¶ 4; Hughes Decl., Ex. 2.  Aurora Loan

14 Services filed suit against Defendants Jacobs and Roland in King County Superior Court; this

15 case was resolved in Aurora Loan Services favor in September 2012.  Hughes Decl. at ¶ 5;

16 Hughes Decl., Ex. 3.

17     Shortly after the resolution of the Superior Court case, on October 5, 2012, Defendants

18 Jacobs and Roland recorded a forged document that purported to assign the deed of trust for the

19 Property from Aurora Loan Services to a fictitious entity named "Northwest Central Pacific 2006

20 Corporate Pass Thru Certificates Series 2006."  Hughes Decl., Ex. 5.

21

22 ───────────────

23      [1]Plaintiff Nationstar purchased many of Aurora Loan Services, LLC's assets in 2012,
   including the Property.  Decl. of Jill Cruz in Support of Pl.'s Resp. to Defs.' Mot. for Summ. J.
24 [49] at ¶ 2.

MEMORANDUM OPINION & ORDER- 2

1    The Property was sold by National Recovery REO Services Inc. to Defendant Drexel

2   Investments, Inc., on April 9, 2013.  Hughes Decl., Ex. 7.  Also on April 9, 2013, a Deed of

3   Trust with Eastside Funding, LLC as the grantee and Drexel Investments, LLC as the grantor

4   was recorded.  Real estate brokers facilitated the purchase of the Property by Drexel.  Defs.'

5   Resp., Ex. 2 (Declaration of Suneet Diwan ("Diwan Decl.")) at ¶ 7.  NexTitle provided escrow

6   services and First American Title Company ("FirstAm") issued two title insurance policies (for

7   the buyer and lender).  Defs.' Mot., Ex B.  Drexel subsequently took possession of and changed

8   the locks on the Property.

9    On April 14, 2013, local RE/MAX agent Patrick Armstrong, acting on behalf of Plaintiff,

10  posted a notice on the door of the Property, asserting ownership.  Diwan Decl. at ¶ 5; Hughes

11  Decl., Ex. 8.  The notice stated that the Property had been foreclosed on September 2, 2010, by

12  Aurora Loan Services and was currently "Bank owned."  Hughes Decl., Ex. 8.  The notice

13  warned that any attempt to re-occupy the property would be met with legal action.  *Id.*  Further,

14  Armstrong changed the locks on the Property.  Diwan Decl. at ¶ 5.

15   Defendant Diwan, acting as General Counsel for Defendant Drexel, e-mailed Armstrong

16  on April 14, 2013.  Hughes Decl., Ex. 9.  Diwan attached to the e-mail the deed purporting to

17  grant Drexel title to the Property.  *Id.*  In the e-mail Diwan asserts that Drexel bought the

18  property on April 9, 2013, accuses Armstrong of "illegally trespass[ing] and damage[ing] my

19  locks on my company's property," and demands that Armstrong pay $240.58 to cover the cost of

20  changing the locks.  Hughes Decl. ¶¶ 10-11; Hughes Decl., Ex. 9.  Diwan stated that Armstrong

21  should not enter the property and that if Armstrong wished to pursue the matter further, his

22  attorney should contact Diwan.  Hughes Decl., Ex. 9.

23

24

1   Armstrong responded to Diwan's e-mail on the same day, April 14, 2013.  Hughes Decl.,

2   Ex. 9.  Armstrong stated that "I appreciate you sending me this & have forwarded it on.  I was

3   only doing what was requested of me by [Plaintiff] (who purchased all of Aurora's assets) . . . in

4   their listing agreement.  If you want go to after them for the money feel free to do so.  I, also

5   have lost money on this.  I wish you the best and apologize for the confusion & inconvenience."

6   Hughes Decl., Ex. 9; Cruz Decl. ¶ 3.  Diwan's own real estate agent also e-mailed him and stated

7   that "[m]y contacts said that internal lines were crossed at the bank.  He sends his apologies and

8   has offered to cover the invoice you attached.  He's putting the check in today's mail and hopes

9   that you will excuse the mix up."  Hughes Decl., Ex. 9.[2]

10   Drexel proceeded to have improvements made on the Property.  Diwan Decl. at ¶ 6.

11   According to Drexel, Northlake, a company owned by Defendant Diwan's family, repaired the

12   front deck, painted and put new flooring in, built a laundry room, performed landscaping,

13   installed new windows, repaired parts of the kitchen, installed new appliances, installed new

14   baseboards, doors, and trim, made repairs to the exterior, and installed new glass in the rear door

15   of the Property.  Defs.' Mot., Ex C.  Drexel made these improvements for the purpose of renting

16   the Property.  At some point, Drexel began renting the Property to a tenant for approximately

17   $2,200 to $2,400 a month.  Diwan Dep. at pp. 60-64.

18   On June 2, 2013, Nationstar's attorney contacted Drexel and notified them that the

19   purported seller, National REO Recovery Services, Inc., did not have authority to sell the

20   Property.  Diwan Decl. at ¶ 7.  On June 28, 2013, Nationstar sent Drexel a letter stating that the

21

22

23   [2]No explanation is provided as to the identity of Diwan's real estate agent's "contact."  In addition, while Defendants assert that they received a check reimbursing them for the cost of changing the locks, Defs.' Resp. at 8, no evidence is provided to support this assertion.  Plaintiff

24   denies that it sent the check.  Cruz Decl. at ¶ 3.

1   conveyance was fraudulent and demanding Drexel assist Nationstar in restoring Nationstar's title

2   to the Property.  Defs.' Mot., Ex. E.  Drexel refused to quitclaim interest in the property, "in

3   order to protect its rights in the improvements it made to the Property in good faith . . . ."  Diwan

4   Decl. at ¶ 8.  Plaintiff commenced the instant litigation on July 16, 2013.

## II.  STANDARD OF REVIEW

6       "The court shall grant summary judgment if the movant shows that there is no genuine

7   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

8   R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine

9   issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The court "should

10  review all of the evidence in the record . . . [and] draw all reasonable inferences in favor of the

11  nonmoving party."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  A

12  genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict

13  for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However,

14  "[t]he mere existence of a scintilla of evidence" in support of a nonmoving party's position is not

15  sufficient to create a genuine issue of material fact.  *Anderson*, 477 U.S. at 252.

## III.  ANALYSIS

17  **A.  Defendants' Motion for Summary Judgment**

18      Defendants move for summary judgment on two of Plaintiff's claims: Slander of Title

19  and Conspiracy.

20      **1.  Slander of Title**

21      A plaintiff bringing a claim of slander of title must demonstrate that a defendant has

22  spoken words that (1) are false; (2) have been maliciously published; (3) are spoken with

23  reference to some pending sale of the property; (4) resulted in pecuniary loss or injury to the

24

1  claimant; and (5) were such as to defeat the plaintiff's title.  *Schwab v. City of Seattle*, 826 P.2d

2  1089, 1092 (Wash. App. 1992) (citing *Pay 'N Save Corp. v. Eads*, 767 P.2d 592 (Wash. App.

3  1989)).

4          Defendants dispute only two of the elements of Plaintiff's slander of title claim: that the

5  words were maliciously published, and that the words were spoken with reference to a pending

6  sale of the property.

7          In reference to the "pending sale" requirement, Defendants correctly argue that the mere

8  "possibility" of a sale of property falls short of meeting the requirement that slander "must be

9  spoken with reference to some pending sale of the property."  *Schwab*, 826 P.2d at 1092.  "An

10  expectation or anticipation . . . [of] negotiating for the purchase" of a piece of property is not

11  sufficient.  *Clarkston Cmty. Corp. v. Asotin Cty. Port Dist.*, 472 P.2d 558, 560 (Wash. App.

12  1970).  Defendants argue that Plaintiff has failed to demonstrate any evidence of a pending sale

13  or, indeed, even the possibility of a sale.  Plaintiff makes no direct response to this argument.

14  The Court agrees that Plaintiff has failed to establish the alleged slander of title was "spoken

15  with reference to some pending sale of property."

16          Because Plaintiff has failed as a matter of law to establish the "pending sale"

17  requirement, the Court does not reach the parties' arguments regarding whether the alleged

18  slander was "maliciously published."  As Plaintiff has failed to establish an essential element of

19  its slander of title claim, the Court grants Defendants summary judgment as to this claim.

20          **2.  Conspiracy**

21          A plaintiff bringing a claim of civil conspiracy must present evidence that "(1) two or

22  more people combined to accomplish an unlawful purpose or combined to accomplish a lawful

23  purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the

24

1   conspiracy." *All Star Gas, Inc. v. Bechard*, 998 P.2d 367, 372 (Wash. App. 2000) (citing *Wilson*

2   *v. State*, 929 P.2d 448 (Wash. App. 1996), *cert. denied*, 522 U.S. 949 (1997)).

3          Defendants argue that Plaintiff has failed to present any evidence of a conspiracy

4   between them and the defaulted Defendants, Jacobs and Roland.  Defendants argue that, as a

5   result of the fraud perpetrated by defaulted Defendants Jacobs and Roland, they "paid a

6   substantial amount of money to an entity [they] believed had authority to transfer title."  Defs.'

7   Mot. at 7.  Defendants thus argue that the alleged conspiracy was "directly at odds with the

8   financial interests of Drexel."  *Id.*  Thus, Defendants point out, Plaintiff "has essentially asserted

9   that Drexel conspired to pay over $300,000 to possess a fraudulent and ineffective deed."  *Id.* at

10  8.

11         Plaintiff responds that to establish a conspiracy "it is sufficient if the proof shows concert

12  of actions or other facts and circumstances from which the natural inference arises that the

13  unlawful act was committed in furtherance of a common design, intention, and purpose of the

14  alleged conspirators.  In other words, circumstantial evidence is competent to prove conspiracy."

15  *Sterling Business*, 918 P.2d at 534 (quoting *Lyle v. Haskins*, 168 P.2d 797 (Wash. App. 1946)).[3]

16         Plaintiff alleges that Defendants conspired with defaulted Defendants Jacobs and Roland

17  in a fraudulent transaction purporting to transfer title in the Property.  According to Plaintiff

18  there were multiple indications from which a jury could conclude that Defendants knowingly

19  participated in this conspiracy.  But the factors that Plaintiff points to all occurred *after* the

20  _____

21  [3]Plaintiff also makes a brief, specious argument that there is no *mens rea* requirement for a civil
    conspiracy claim under Washington law.  Plaintiff offers no case law to support this assertion,
22  nor can it.  Case law is clear that in an action for civil conspiracy, "it is sufficient if the proof
    shows concert of action or other facts and circumstances from which the natural inference arises
23  that the unlawful overt act was committed in furtherance of a common design, *intention*, and
    purpose of the alleged conspirators . . . ." *Sterling Business*, 918 P.2d at 534 (emphasis added).
24

1  transfer of the Property.  Plaintiff points to "red flags" that should have led Defendants to

2  question National Recovery REO Services Inc.'s authority to sell the property.  Plaintiff argues

3  that Defendants' failure to question the transaction could lead a jury to infer that Defendants

4  were willing participants in the fraud.  The Court has examined the "red flags" that Plaintiff

5  proffers in support of its argument: the notice posted on the Property by Patrick Armstrong

6  asserting Plaintiff's ownership of the Property; the hiring by Defendants of their family's

7  business to improve the Property and prepare it for rental; and Defendants' renting out the

8  property for months after knowing that the Property had been fraudulently conveyed.  The Court

9  finds that all of Plaintiff's examples occurred after the fraudulent conveyance took place.

10  Conspicuously absent is any evidence that would allow for an inference that Defendants

11  conspired with, Jacobs and Roland to further fraudulent conveyance.

12        Therefore, the Court concludes that no reasonable jury could find that Defendants

13  participated in the alleged conspiracy.  Accordingly, the Court grants Defendants summary

14  judgment on this issue.

15               **3.  Plaintiff's Motion for Partial Summary Judgment**

16               **a.  Declaratory Relief and Quiet Title**

17        Plaintiff seeks to quiet title to the Property and requests that the Court enter a declaratory

18  judgment declaring the following instruments to be null and void:

19    (1) The document titled "Rescission of Trustee's Deed Upon Sale," recorded by defaulted

20        Defendants Jacobs and Roland on March 15, 2012, under King County Recorder's No.

21        20120315001397.

22

23

24

1  (2) The document title "Corporate Assignment of Deed of Trust," recorded by defaulted

2  Defendants Jacobs and Roland on October 5, 2012, under King County Recorder's No.

3  20121005000560.

4  (3) The document titled "Statutory Warrant Deed," recorded on April 9, 2013, under King

5  County Recorder's No. 20130409001698.

6  (4) The document titled "Deed of Trust," recorded on April 9, 2013, under King County

7  Recorder's No. 20130409001699.

8  Section 7.24.020 of the Revised Code of Washington permits "[a] person interested under

9  a deed . . . [to] have determined any question of construction or validity arising under the

10  instrument . . . and [to] obtain a declaration of rights, status or other legal relations

11  thereunder."

12  Section 7.28.010 of the Revised Code of Washington permits "[a]ny person having a

13  valid subsisting interest in real property, and a right to the possession thereof, [to] recover the

14  same by action . . . against the person claiming the title or interest therein, and may have

15  judgment in such action quieting or removing a cloud from plaintiff's title . . . ."

16  On June 28, 2013, Plaintiff's counsel contacted Defendants and demanded that they

17  "cooperate fully in returning unclouded ownership of the property" to Plaintiff.  Defs.' Resp.,

18  Ex. 1 (Declaration of Sean Flynn ("Flynn Decl.") at p. 24.  Defendants do not dispute that

19  Plaintiff is the rightful owner of the Property.  Rather, Defendants argue that their interest in

20  the Property, i.e., the improvements made by Defendants and the basis for their unjust

21  enrichment claim, permits them to "decline[] to quitclaim all interest to Nationstar and [to]

22  instead await judgment from the Court."  Defs.' Resp. at 4.

23

24

MEMORANDUM OPINION & ORDER- 9

1  Defendants contend that they are required to refrain from quitclaiming title to Plaintiff,

2  relying on Section 7.28.180 of the Revised Code of Washington, titled "Defendant's

3  counterclaim for permanent improvements and taxes paid – Judgment on counterclaim –

4  Payment."  Section 7.28.180 states the following:

5      If the judgment be in favor of the plaintiff for the recovery of the realty, and of the
       defendant upon the counterclaim, the plaintiff shall be entitled to recover such
6      damages as he or she may be found to have suffered through the withholding of
       the premises and waste committed thereupon by the defendant or those under
7      whom he or she claims, but against this recovery shall be offset pro tanto the
       value of the permanent improvements and the amount of said taxes and
8      assessments with interest found as above provided. Should the value of
       improvements or taxes or assessments with interest exceed the recovery for
9      damages, the plaintiff, shall, within two months, pay to the defendant the
       difference between the two sums and upon proof, after notice, to the defendant,
10     that this has been done, the court shall make an order declaring that fact, and that
       title to the improvements is vested in him or her. Should the plaintiff fail to make
11     such payment, the defendant may at any time within two months after the time
       limited for such payment to be made, pay to the plaintiff the value of the land
12     apart from the improvements, and the amount of the damages awarded against
       him or her, and he or she thereupon shall be vested with title to the land, and, after
13     notice to the plaintiff, the court shall make an order reciting the fact and
       adjudging title to be in him or her. Should neither party make the payment above
14     provided, within the specified time, they shall be deemed to be tenants in common
       of the premises, including the improvements, each holding an interest
15     proportionate to the value of his or her property determined in the manner
       specified in RCW 7.28.170: PROVIDED, That the interest of the owner of the
16     improvements shall be the difference between the value of the improvements and
       the amount of damages recovered against him or her by the plaintiff.

17  This section is a discussion of the taxation procedure in a case in which a counterclaim

18  for unjust enrichment is resolved at the same time as a judgment for quiet title.  Section

19  7.28.160 of the Revised Code of Washington, titled "Defendant's counterclaim for

20  permanent improvements and taxes paid," is slightly more relevant.  Section 7.28.160 states

21  that "[i]n an action for the recovery of real property upon which permanent improvements

22  have been made . . . by a defendant . . . holding in good faith under color or claim of title

23

24

1  adversely to the plaintiff, the value of such improvements . . . must be allowed as a

2  counterclaim to the defendant."

3  It is undisputed that Defendants may assert a counterclaim for unjust enrichment as

4  permitted by Section 7.28.160. Defendants rest their resistance to Plaintiff's claim to quiet

5  title on an incorrect reading of the statute: that they were *required* not to give a quitclaim

6  deed to Plaintiff, and that this Court may not grant Plaintiff quiet title, because Defendants'

7  unjust enrichment claim is "intertwined" with Plaintiff's quiet title claim. Defendants cite to

8  no authority that requires that, to assert a claim for unjust enrichment, a defendant must, or

9  should, maintain possession of a property in which they no longer have a good faith legal

10  interest.

11  Defendants' erroneous position stems from confusion regarding their right to assert a

12  *claim* against Plaintiff, and their right to maintain a lien, or in this case, possession of, the

13  Property. Washington case law is clear that an unjust enrichment *claim* is not, and does not

14  provide, a lien on a piece of property. *See Irwin Concrete, Inc. v. Sun Coast Properties, Inc.*,

15  653 P.2d 1331, 1335 (Wash. App. 1982) (discussing difference between a claim for unjust

16  enrichment as a remedy rather than as a lien on property) ("[W]e emphasize the obvious

17  distinction between a lien, which provides security for a claim, and the underlying claim

18  itself."). Section 7.28.160 cannot be properly read as permitting a defendant to maintain

19  possession of property to which it has no lawful claim. Rather, Section 7.28.160 merely

20  permits a defendant to assert a counterclaim in litigation, as Defendants have done in the

21  instant litigation. Resolution of Plaintiff's quiet title claim is not "intertwined" with

22  Defendants' claim.

23

24

MEMORANDUM OPINION & ORDER- 11

1      Accordingly, the Court grants Plaintiff's Motion for Summary Judgment as to its

2   claim for quiet title and declaratory judgment.

3                    **b.  Defendants' Cross-Claim for Unjust Enrichment**

4      Defendants pursue a claim of unjust enrichment against Plaintiff based upon the alleged

5   improvements made to the Property.  Plaintiff seeks summary judgment on Defendants' cross-

6   claim.

7      Unjust enrichment is the method of recovery for the value of a benefit retained absent any

8   contractual relationship because notions of fairness and justice require it.  To prevail on their

9   unjust enrichment claim, Defendants must establish three elements: (1) that Plaintiff received a

10   benefit, (2) that the received benefit is at Defendants' expense, and (3) that the circumstances

11   make it unjust for Plaintiff to retain the benefit without payment.  All three elements must be

12   established for Defendants to prevail on their unjust enrichment claim.  *Norcon Builders, LLC v.*

13   *GMP Homes VG, LLC*, 254 P.3d 835, 844 (Wash. App. 2011) (quoting *Young v. Young*, 191

14   P.3d 1258 (Wash. 2008)).  "Enrichment alone will not suffice to invoke the remedial powers of a

15   court of equity.  It is critical that the enrichment be unjust both under the circumstances and as

16   between the two parties to the transaction."  *Farwest Steel Corp. v. Mainline Metal Works, Inc.*,

17   741 P.2d 58, (Wash. App. 1987).  "The mere fact that a defendant has received a benefit from the

18   plaintiff is insufficient alone to justify recovery.  The doctrine of unjust enrichment applies only

19   if the circumstances of the benefits received or retained make it unjust for the defendant to keep

20   the benefit without paying."  *Norcon Builders, LLC*, 254 P.3d at 844-45.

21      Plaintiff makes several arguments regarding Defendants' unjust enrichment claim.

22   Plaintiff argues that, given the notice posted on the property by Patrick Armstrong, Defendants

23   had adequate warning regarding the disputed ownership of the Property and thus did not make

24

MEMORANDUM OPINION & ORDER- 12

1  improvements to the Property in good faith.  Similarly, Plaintiff argues that, because Defendants

2  had sufficient warning regarding the ownership dispute, Defendants' improvements were

3  "volunteered" and thus Plaintiff was not unjustly enriched.  Finally, Plaintiff invokes the doctrine

4  of comparative innocence to place the burden of any loss on Defendants.  Pl.'s Mot. at 11-15.

5       These arguments all involve disputes of fact as to when Defendants received notice that

6  their title to the Property was, in fact, fraudulent.  A number of facts are disputed, including

7  whether Plaintiff or some other party sent Defendants a check to compensate them for the cost of

8  changing the locks on the Property, the specific comments made by Patrick Armstrong to

9  Defendants, and the timing of the repairs and improvements made to the property by Defendants.

10 The determination of these facts will involve evaluation of witness credibility and motivation

11 and, as such, is properly the province of a jury.

12       Accordingly, the Court denies Plaintiff's motion as to Defendants' unjust enrichment

13 claim.

14                                  **IV. Conclusion**

15       For the reasons stated above, **IT IS HEREBY ORDERED** that:

16       (1) Defendant's Motion for Summary Judgment [47] is **GRANTED**.  Plaintiff's claims of

17 civil conspiracy and slander of title are **DISMISSED**.

18       (2) Plaintiff's Motion for Partial Summary Judgment [52] is **GRANTED** as to Plaintiff's

19 quiet title and declaratory judgment claims.  Defendants shall deliver a quitclaim deed to

20 Plaintiff forthwith and shall otherwise assist Plaintiff in quieting title to the Property.

21       (3) The following documents are declared null and void:

22

23

24

1        a.   The document titled "Rescission of Trustee's Deed Upon Sale," recorded by

2            defaulted Defendants Jacobs and Roland on March 15, 2012, under King County

3            Recorder's No. 20120315001397.

4        b.   The document title "Corporate Assignment of Deed of Trust," recorded by

5            defaulted Defendants Jacobs and Roland on October 5, 2012, under King County

6            Recorder's No. 20121005000560.

7        c.   The document titled "Statutory Warrant Deed," recorded on April 9, 2013, under

8            King County Recorder's No. 20130409001698.

9        d.   The document titled "Deed of Trust," recorded on April 9, 2013, under King

10           County Recorder's No. 20130409001699.

11     (4) Plaintiff's Motion for Partial Summary Judgment [52] is **DENIED** as to Defendants'

12   unjust enrichment claim.

13       **SO ORDERED**.

14   Dated:  August 26, 2014

15

16   *Barbara J. Rothstein*

17   _____

18   BARBARA J. ROTHSTEIN

19   UNITED STATES DISTRICT JUDGE

20

21

22

23

24